May it please the court, Charles Cervillo on behalf of Appellant McTiernan, I'd ask to reserve a minute or two for rebuttal. I'll try and help you. Thank you. Keep an eye on the clock. Thank you. As the court is well aware, this is a case involving the interpretation of 18 U.S.C. 2511 2D, which raises the question of whether suppression is required when a recorder who happens to be part of a criminal conspiracy is secretly taping a client to further the recorder's master plan of his RICO conspiracy. Well, that's the whole issue. Yes, that's the issue. I mean, the way you state it, you've won. Well, we like to think that's the way it should have worked out. The first time we were here, it worked out pretty well. We're looking for a deja vu experience. Your man so far has only parlayed four months into 12 months, right? So far, that's not so good. Not at all. Not at all. So the question, of course, the first question, of course, is looking at the standard of review for the court's factual determinations to see if they stand up. I cited Wednesday I gave the court a couple of other standard of review cases for assuming the standard for reviewing factual determinations under the clearly erroneous standard simply means that the reviewing court looks for a modicum of evidence that supports the trial court's findings and says that's enough. Well, that's not the standard. The court looks at the entire record and Well, just a minute. I'm trying to figure out why that isn't the standard. We have to look at what the court determined the facts were, and then we have to look at whether he applied the correct law. There's no question he was applying the correct law. There's no question he determined what the facts were. It seems to me that you're focusing me on is the application of that law to those facts. Isn't that what you're really focusing me on? Well, I'm arguing twofold. One, that the facts as found don't support the ultimate finding because the facts are implausible. I appreciate that. But in addition, the case law that I cited from the United States Supreme Court interpreting the Well, that was what I was having my question about. That seemed to be what your letter was about. Right, in which, for example, one line from the 2001 Easley v. Cromartie case, the court said the record does contain a modicum of evidence offering support for the district court's conclusion. But it still, in looking at the entirety of the record, said that isn't enough. We're finding those findings clearly wrong. Did they find an abuse of discretion? They found that, well, in effect, I think they're I mean, I'm using those words only to try to determine what my standard is, because, I mean, I've been in front of a lot of juries in my life. I've put the jury instructions to them about what negligence is, and they find out what the law is, and then they apply that law, or they find out what the facts are. They apply that law to the facts, and I call that a factual determination. It seems to me to be the same thing that happens in a motion to suppress. As long as they apply the correct law, the legal determination is over. We're at the point where now the judge, listening to all the evidence, hearing what he's got in front of him, knowing what's there, now is just applying that law to those facts, which in every other circumstance, I would suggest, is not legal challenge at all. Well, let's look to the facts that are found. I mean, we've got a lot of cases in our circuit by judges who are not being very cautious about what they say standard review is. They just cite the last case which said something, which the last case said something. But with this case, we're focusing directly on this. This judge had to make the decision by the evidence he had in front of him, which I have to give him very clear error review, no question on the facts, and now decide whether it met the statute. Now, you're trying to tell me I'm to make that de novo? Well, I'm saying that the facts as found were clearly erroneous. Now, okay, if you're going to go there, I can see where you're going. And what were those facts? Actually, a number of them, most of the facts are undisputed because they're based on tapes and the indictment of Mr. Pelicano, which was very detailed, describing a conspiracy going on for seven years with his co-conspirators Arneson, Turner, and Kachigian. The facts included that wiretapping was part of the RICO enterprise that he ran, that he had clients with whom he would secretly tape record their comments, which he said in his first trial, and we're endorsing what he said, that is that he did that taping so that it was an inventory for safekeeping for, in effect, to remind himself of what he needed to do and what a client needed to have. Now, that sounds like, in the context of his RICO wiretapping conspiracy, that sounds like a criminal purpose. And we made the analogy, and actually the district court seemed to accept part of the analogy, that is that if a person is running a drug conspiracy and is writing out drug ledgers or P&O sheets and those are seized, those come in as evidence of the furtherance of the conspiracy. And so that type of record keeping is, there's not any argument, the district court accepted the fact that that type of evidence is done for the furtherance of the crime. In essence, they're the bookmaking slips that the bookie keeps in order to figure out who he has to pay, right? Right. And we cited the bookkeeping case, the United States versus Lamb, the site in the Northern District of California, where the bookkeeping operation was recording the calls made by people making their illegal bets. But isn't part of your problem that those cases, it seems to me, may be distinguishable on the grounds that there are state statutes which prohibit gambling activities, and in some cases, the creation of gambling records, which in essence, that's contraband, I guess, if you want to call it that. Here, the question is whether it's okay for somebody who may very well be engaged in criminal activity and also legal activities, but the jury has to figure out what he's doing when, to keep records, which he says he did for purposes of arrest, a reminder of what he needed to do. Well, I would add to the context of the undisputed facts that when Pellicano was secretly recording his clients, that was illegal under California law. That isn't the purpose of that illegal recording under California law is not something that meets in itself the requirement under the statute that it be for criminal purposes, but it adds to the criminality. Could you cite me the code section of California law that says what he did was illegal? Penal code section 632. I looked at 632. I'm having a tough time with that. I mean, I saw in Lamb that the government even conceded what happened was illegal. Because 3337A made it illegal. So I didn't think Lamb was very good. So I got back to Moore. There's two things they say in Moore. Permit one party to record a conversation when the recorder is acting out of a legitimate desire to protect himself, which may not have been exact, but we didn't. I mean, or when the purpose is to make or preserve the accurate record in order to prevent future distortions by a participant. Well, why isn't that what he was trying to do? He's just putting down what he needed to do, and he doesn't want somebody else to distort. That was his job. Well, that's correct, as he said, that he is taking down what he needed to do. That is evidence in furtherance of his RICO conspiracy that he was taking down this information by secretly recording it in order to further his wiretap activity, which would follow. There's no question we don't have any evidence that he did it to extort anybody. That's correct. And there's no evidence that we have any. Well, I'll look at that statute again, but in my book, there's no statute making what he did illegal. I'm stuck with trying to determine whether what he did was to prevent distortion or protect himself or something like that, it seems. Well, I think we could take at face value what he told his own jury. I read what he said. He was recording so that he could have the data to know what he was supposed to do in wiretapping. It was his to-do list. His to-do list. Well, how do you distinguish this case of Sussman v. American Broadcasting Companies, which is a Ninth Circuit 1999 decision that, quote, it says, the focus of the inquiry is not upon whether the interception itself violated another law. It is upon whether the purpose for the interception, its intended use, was criminal or tortious. Right. And Sussman was a news-gathering case. Right. And the court had no problem finding that that wasn't a criminal purpose. That is, that a TV show like 20-20 went in on investigative reporting and was finding out what was going on with a suspicious enterprise. Clearly, there's no criminal purpose here. Here, the entire context of what Pellicano is doing is criminal. He's in a seven-year RICO wiretapping enterprise. He's making illegal recordings under Penal Code Section 632. And that's what Sussman said. The fact that it's illegal itself under the Penal Code is not enough to show that. And I guess that's an open question in this circuit, isn't it, this issue you've got, whether the recording itself has to be an illegal purpose or not. But most of the circuits that have decided this issue are against your position, are they not? No, it's clear from the statute that I have to show that the recorder's purpose is for a criminal or tortious purpose. Right. And we have a factual finding that it was not. And I'm referring you to, I guess it's ER 26, which is the district court's minute order. In essence, she rejected the argument that you're making to us here as being overly broad, that you want us to construe this statute in such a way that any recording could always be construed as illegal recordkeeping. But then she goes on to say there was no evidence that the recording was to be used for a criminal or tortious act independent of the very criminal acts described in the recording itself. I read that to mean, had she been making this recording for the purpose of extorting Mr. McTiernan, we'd have a different situation. But that wasn't the purpose of this recording. It was, in essence, to remind him of what he'd promised Mr. McTiernan he would do for Mr. McTiernan, which we all agree was illegal, going after what is a raven or a roving. So he was looking at the producer to see if Mr. McTiernan was concerned that they were sabotaging the movie he was making. So he asked Pelicano to listen to the office recordings of the producer to see... Basically, get me some dirt on this guy so that I can use it against him with the studios. Well, to see if he was being undermined by the producer. Get the guts on this guy. That's what McTiernan is asking Pelicano to do. The district court's findings in that regard is itself almost a non sequitur. Pelicano says, I'm recording because I'm going to do an illegal wiretap and I need to know exactly what I'm supposed to be looking for. So this is helping me focus my criminal wiretap by channeling it into the... and focusing it on what I'm supposed to listen to. That's certainly in furtherance of his criminal purpose of doing the tap. To say that anybody willy-nilly who makes a recording, there's no evidence... But your argument really is that every time somebody makes a surreptitious one-party recording, it's illegal. Because it must be part of the related scheme to wiretap somebody else or to engage in RICO violations or whatever it might be. And that reads out of the statute the very wording that Congress imposed about criminal or tortious purpose. I reject the court's characterization here. I'm making your argument much broader than you're trying to define it. The court did say that below. It doesn't withstand scrutiny that we have a focused purpose question here. In the context of the entirety of his ongoing seven-year RICO conspiracy of criminality, in the context of him making illegal recordings of his own clients under Penal Code Section 632, in the context of him asking them for direction on what should I be looking for, those tapes are clearly for a criminal purpose to help him focus on a wiretap. That's in furtherance of a criminal purpose. It is not willy-nilly. Just because somebody is doing... The cases are clear, I wouldn't grant you. There are cases where people discuss criminal activity, but it's not for... They're talking about crimes. Mr. Civil, you've burned up your time, but I will give you some rebuttal. Thank you very much. You're welcome. Good morning. Jean-Claude Andre on behalf of the United States. I think the easiest way for this Court to resolve this case is to be faithful to the standard of review. There is no dispute that clear error deference applies to Judge Fischer's findings here, and for two principal reasons, there is no clear error. First, defendant's theory that recordkeeping of a criminal enterprise could satisfy the statute is simply too broad, and the conduct that it would sweep in is simply too attenuated. Factually, of course, defendant didn't even prove up that theory. Judge Tallman, you mentioned earlier that this sounds a lot like bookkeeping slips. I think there's a critical distinction here borne out by the record. Even the opening... No, no, no, no. I said are cases focused on... You misheard or I misspoke. My apologies. Those cases, Lam and so on, focus on the purpose of the recordings being, in essence, an equivalent to making written bookkeeping. My apologies. I thought you were also likening what defendant's argument... No, no, no, no. I was trying to confront Mr. Civil with what I thought was a key distinguishing point. Well, no, what I was going to say is it is a key distinguishing point. Well, I thought you would agree with my question. Of course. No, in this case, and even if we go back to this opening statement that the government believes is worthy of very, very, any evidentiary value, defendant's taking it somewhat out of context. In that statement, Pelicano says, I receive 50 calls a day. I receive them from clients. I receive them from targets calling me. I receive them from other people I want to maintain contact with. And then I record them. What that means is that his recordings are not all categorically in furtherance of his wiretapping enterprise, and he's not keeping a record of what he has to do in violation of some other statute. So, factually, defendant didn't prove, even taking as true Pelicano's opening statement, that Pelicano had a criminal purpose here. Mr. Civil's argument is that whether or not Mr. McTiernan was charged with the 371 conspiracy with Mr. Pelicano, in truth and in fact, the whole purpose of this conversation was to solicit illegal wiretapping of the third person, and that as an act in furtherance of that uncharged conspiracy, this recording was made. And, therefore, it should be deemed to be a criminal purpose within the definition of the statute. That's what I understand his argument. No, I do, too. And, legally, that's just too attenuated. The purpose of the statute, the legislative history statements, and, of course, five circuits, including this Court in Sussman, have made clear that the focus is on whether the intended use is to harm the recorded party. And here, defendant's theory is that this recording was going to be used to harm Charles Rovin, not to harm defendant. But if the purpose of the conspiracy is to engage in illegal wiretapping, the government is always arguing to us that even innocent acts can be conducted in furtherance of a criminal conspiracy and constitute an overt act in furtherance of that conspiracy. And I think the critical distinction there is that whether something is in furtherance of or whether something is intended to be used to commit is a meaningful one. Well, that's why we look at the language, to remind himself of what he needed to do. Right. And he's saying, this is what I've got to do. Right. But he's saying that with respect to a whole number of things. He's saying that with respect to not just client calls and moreover, this is where our nonpertinent recordings that we introduced in our opposition to the motions of press become critical. We introduced evidence that Pelicano recorded a call to 411 looking for Circuit City's phone number, a call to FedEx, a call to his daughter's school, a call to his doctor, and he didn't record all clients. That was undisputed as well. But the question is, what was the purpose of this recording? Absolutely. The fact that he may well have not violated a statute in a call to 411 doesn't answer the question. Well, it does insofar as, if defense asking you to infer that even though there is no direct evidence that Pelicano made this recording to harm Mr. McTiernan, and even though there is no direct evidence that this particular call was being used to harm Charles Rovin, he's asking you to infer that that is the purpose. But when you look at the fact that Pelicano clearly did not record all calls, including all- Did you convict Mr. Pelicano of RICO, which included illegal wiretapping of Mr. Rovner? Yes, we did. Well, we convicted Pelicano of the wiretapping conspiracy, which included Charles Rovner. Right. So I'm having a hard time trying to understand why the solicitation call from Mr. McTiernan would not be a criminal act in soliciting the wiretapping violation of Mr. Rovin. It is, but it doesn't mean that the purpose of the recording that Pelicano made of that call is to be used to commit a criminal act. And it dovetails, then, with all the cases from around the country. And again, they're not talking about this particular underlying crime, but all the And what's your basis for saying that the criminal act to violate the statute has to be to intent to harm the person being recorded, as opposed to harming, you know, the ones, the subject of the wiretap that's going to take place? Well, the easiest, I guess, support for that is to point to this Court's decision in Sussman and then the decisions of the Second Circuit in Caro, Sixth Circuit decision, the Seventh Circuit decision in high fructose corn syrup, and the Eighth Circuit decision, I believe, in Meredith. So five circuits have all said that that is the use, intended use that the courts are searching for. And that's borne out by the legislative history where Senator Hart repeatedly said that was the intended scope of this provision, and further supported by the actual findings of Congress in this particular piece of legislation. Congress set out to protect the innocent third parties. So they set out to protect, in enacting this comprehensive scheme, the Charles Rovins of the world and the other targets of Pelicano. But not to protect his co-conspirators. And this is where I think the Underhill analysis from the Sixth Circuit is dead-on. You know, if we have this evidence. I like to hear that the Sixth Circuit's dead-on. That's good. I was going to say, you're saying that to the right people. I guess my worry about that is, and I guess the former prosecutor has said it best, when I read Sussman, it must have been done for the purpose of facilitating some further impropriety. And I look at what you have done in your indictments and how you've gone about it and who was, in fact, indicted and you got conviction from. Even if he wrote it down to remind him what he had to do, isn't that the purpose of facilitating some further impropriety? I mean, it doesn't have to be blackmail. It doesn't have to be propriety against the one calling. It can be any impropriety. But Sussman also talks about the intended use to harm the surreptitiously recorded parties. So while perhaps Sussman broadens the scope a little bit, I think, and then takes it back and narrows it elsewhere in the decision. But either way, what you have here is the statement by Pelicano, which the district court was well within her discretion to give limited evidentiary value to. We think the district court should have given it none. It was incredible in so many ways. We have other evidence that we marshaled that competed against that evidence, and the district court made a factual finding. And under clear air review, it's not illogical, implausible, or without any support in the record for the district court to have made that particular finding. So let me make sure I understand. You don't want us to credit the statement by Pelicano that he made to the jury pro se when he was representing himself at his trial? No, I don't. Okay. So then what do I look to in order to uphold the district court's factual finding that it was made for a legitimate purpose, or at least not for a criminal purpose? Right. The district court's finding was that the defendant didn't carry his burden of establishing by a preponderance that Pelicano had a criminal purpose. So there just isn't any evidence from which we can conclude, as Mr. Seville is asking us to conclude, that it was done for a criminal purpose? Exactly. Because the only possible evidence is this opening statement. But it's hearsay. It's not a party admission in this proceeding. And while the district court's free to give us some credit under Matlock, the district court didn't give it much. And she didn't give it much for good reason, in that Pelicano contradicted himself in closing when he said no one will ever know why he did this. He said something that was, the defendant concedes is untrue in the very next paragraph of his opening statement with respect to the fact that no one else would ever hear  So the fact that Mr. McTiernan was not then represented by a great lawyer like Mr. Seville means that he did not call Mr. Pelicano to the witness stand in order to testify as to what he meant or what he intended when he recorded Mr. McTiernan. Nor did his former lawyer call or show that any of the witnesses who worked with Judge Fisher in these other trials would have said he did it for a criminal purpose. And the burden was on him to show that and he just didn't show it. Absolutely. And to clarify one point, Mr. Seville was Mr. McTiernan's lawyer when the suppression motion was filed. So maybe he's not as great as that. I wasn't trying to say that. I think he's a great lawyer. I mean, the bottom line, though, it seems to me that your argument leads me to worry about whether I can really say the district court did the right decision in not having a hearing. Whereas it seemed to me counsel's argument said, if I go along you, why did he need a hearing? You've said everything that's got to be said. There's no witness that's going to come in and say anything you're not already saying. Why did he not need a hearing? If I look at yours, I'm wondering why in the devil we shouldn't have had a hearing. I think these two issues have to be dealt with separately. And what supports that, of course, is that the standards of review are different. I mean, at least nominally different. They're not different. They're just applied to different circumstances, but the same standard. Well, when you unpack them, of course. But, I mean, clear error review is the stated standard for the suppression, factual finding underlying suppression denial, and abusive discretion is the stated standard for evidentiary hearing. So in resolving the first question that we've been talking about, I think you look at the state of the evidence that is before you without any speculation about what else might be developed and say, did the district court clearly err? No. Then when you turn to the evidentiary hearing question, you look at the defendant's proffer. And his proffer, after having, despite having three years to develop something meaningful, consisted of, and it was thick, but it consisted of really just five little soundbites from various employees saying, I knew Pelicano recorded some of his clients, not all of them, but some of them. I transcribed some of his calls, but not necessarily client calls. All this stuff that is undisputed. And because the standard for getting an evidentiary hearing is when the defendant has to come forward with definite, clear, precise, factual assertions that are in dispute, he just didn't do that, because we in the district court accepted his proffer in the FBI 302s and the trial testimony from the prior proceeding. And when the district court pressed defense counsel and said, is that all you have as an offer of proof? He said, yes, but I might be able to elaborate on that if we have a hearing. So we review that decision under the abuse of discretion standard. Correct. Correct. And then the district court said, well, have you made contact with these people, these five or six people you want to call in? And defense counsel said no, despite three years of having been talking with the court and submitting filings relating to the suppression issue. Under those circumstances, it's just clearly not an abuse of discretion for the district court to say, no, that's not what gets you an evidentiary hearing. And those were her exact words. And so I think when you appropriately compartmentalize these two things, you have to uphold the suppression denial, because there was nothing clearly erroneous about Judge Fischer's finding that defendant's theory was just too broad and that even if the theory was viable, he didn't carry his burden, because all he really had was the statement from Pelicano, which was, you know, dubious credibility. And she didn't abuse her discretion in denying an evidentiary hearing because the proffer, despite, you know, three years of aging, was just woefully insufficient here. All right. Mr. Cervello, though, wanted Judge Fischer to recuse herself, right? He did.  And there, you know, again, the review is abuse of discretion. And I think that the key is that while there are adverse rulings that defendant can point to, can't point to any extrajudicial source. And all of the rulings that defendant complains about are ones that Judge Fischer had to make. She had to make credibility determinations back three, four years ago when defendant was trying to withdraw his guilty plea, because there were competing declarations from counsel and from defendant. She had to rule on defendant's sentencing objections, such as the claim that prison would be meaningless because he's so depressed. She had to rule on his claim that the dietary restrictions would make prison difficult. All of these things that defendant has marshaled as supposed evidence of bias or apparent bias are all things that district judges regularly say and are regularly confronted with and called on to resolve. Right. And she didn't end up giving him a – it was still a below-guideline sentence, wasn't it, even the 12 months? Yes. His guideline range went up from zero to six to 18 to 24 because of the perjury conviction, and she gave him 12 months. And, you know, moreover, she gave him – freely gave him bail pending appeal both times. I mean, this is a case where when you look at the totality of the record, it's clear that Judge Fischer was fair. I mean, when she – when she knew she was potentially going out on a limb, she admitted as much. That's why we discussed at length the 41011F waiver issue, where, frankly, we thought that since defendant preserved his right to bring that up on appeal, that we'd see that here, too, because we knew it and Judge Fischer knew it. That was a really close call. And she said it on the record. And so if you look at the totality of the circumstances here and the totality of the record, it's quite clear that Judge Fischer was not biased against the defendant, and nothing that she said even creates the appearance of bias. And the two recusal motions were heard by another judge, correct? Yes. In our district, there's a general order that automatically requires all recusal motions to be put on the wheel, and so they both went to former Chief Judge Hatter. If the panel has no further questions, I will sit down and request that the Court affirm. I don't think that the Court is going to go where the government wants it to do in interpreting the statute. That is to add a new condition on the criminal or tortious purpose and add the clause and that with the intent of harming the recorded person. That makes no sense. It's not in the statute. Congress has had this statute on the books since 1968. They amended it in 1986 when a court criticized the language in the statute and they took that language out. The Vest case was on the books, which is one of the ones that we are using in support of our claim. If they didn't like Vest, which suppressed evidence in the context of a bribery scheme, they could have changed the statute to adopt the government's language. 2511 is an incredibly long statute with a host of exceptions where suppression does not apply. The one that the government is proffering now does not exist. The argument that the government has made for engrossing that exception, that is you must show in addition to the criminal purpose that it was to harm the recorded party, does not exist and it would make no sense. If somebody, for example, was calling a friend in a high corporate capacity, recording the call in order to draw from that person intimate facts concerning corporate life so that he could take that factual information and later use it as insider information to do something in the stock market, that isn't harming the employee. It's harming the corporation. And it would make no sense to say that the criminal purpose in getting that insider information doesn't fall within the statute because the person doing the recording didn't intend to harm the person from the corporation. So I don't accept that and I don't think the court will accept that addition. Sussman didn't adopt that. Mr. Savilla, thank you. Your time has expired. Thank you very much. Thank you both for a very good argument and we'll puzzle our way through the record and the statute and give you an answer as soon as we can. The next case, Sherry Gilbert v. New Line.
judges: Gilman, Tallman, Smith